**UNITED STATES of America, Plaintiff–Appellee,**

v.

**$40,955.00 IN UNITED STATES CURRENCY, Defendant.**

**Basel el Farra, Fatima el Farra, and Rawia el Farra, Claimants– Appellants.**

No. 07–55860.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 20, 2008.

Filed Jan. 27, 2009.

---

Michael J. McCabe and Richard M. Barnett, San Diego, CA, for the claimants-appellants.

Bruce C. Smith, Assistant U.S. Attorney, Appellate Section, Criminal Division, San Diego, CA, for the plaintiff-appellee.

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

Before: SUSAN P. GRABER and RICHARD R. CLIFTON, Circuit Judges, and DAVID G. TRAGER,* District Judge.

TRAGER, District Judge:

This case arises from a civil complaint brought by the U.S. Government for the forfeiture of $40,955 that were the proceeds of marijuana sales. Basel, Fatima and Rawia El Farra (together, "appellants") claimed interests in the forfeited currency and now appeal rulings of the United States District Court for the Southern District of California (1) denying their motion to suppress evidence obtained in a search of Basel and Fatima's home, (2) admitting into evidence statements Basel and Fatima's son, Mohammad, made to the police and (3) denying their motion to dismiss for spoliation of evidence. For the reasons stated below, we affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

On May 28, 2005, members of the Narcotics Unit of the City of Oceanside Police Department ("Narcotics Unit") searched the residence of Mohammad El Farra pursuant to a search warrant issued by the Superior Court of California for the County of San Diego. Mohammad El Farra is the adult son of Basel and Fatima El Farra, in whose house he lived at the time of the search.[1] The search uncovered firearms, nearly one and a half pounds of marijuana, a digital scale, packaging materials and a heat sealer. Although the agents conducted a cursory sweep of the rest of the house, the search focused on Mohammad's bedroom and bathroom, where all the incriminating evidence was

1. Because several members of the El Farra family are involved here, this discussion will refer to each of them by his or her first name.

found. After the search, the Narcotics Unit seized $40,955 in U.S. currency, most of which was found in a safe in Mohammad's bedroom closet. Mohammad told a Narcotics Unit detective, Gregory Rainwater, that everything in the safe was his, and that most of the money was proceeds from his drug sales, which he conducted from his bedroom.

During the search, Narcotics Unit agents kept Basel, Fatima, Mohammad, and Basel and Fatima's daughter and granddaughter in the living room. There, Basel told the agents that, although he did not know the combination to the safe, he kept money and a watch in it. According to agents testifying at trial, Basel was inconsistent in telling them the amount of money and the type of watch he kept in the safe.

Mohammad was charged in the Superior Court of California for the County of San Diego with possession and pleaded guilty to one count of felony possession of marijuana for sale, for which he was sentenced to probation. The search warrant was produced in Mohammad's criminal case but was sealed by the Superior Court.[2] The United States filed a civil complaint in federal court for forfeiture *in rem* against the $40,955 that was seized as proceeds of Mohammad's marijuana sales, and appellants filed claims for the seized cash.[3]

Appellants filed a motion to suppress evidence discovered during the search without having had the opportunity to review the warrant or affidavits supporting it. A review of the warrant would have revealed that, although Mohammad was the focus of the warrant, the entire house was subject to search. Basel and Fatima

argued that they were entitled to challenge the search because they owned and occupied the residence and had the right to admit or deny entry to Mohammad's room. Their daughter, Rawia, who claimed $10,000 of the seized currency, argued that, though she did not reside at the home, she had an expectation of privacy in it because she had a key to the house and stored property there. Other than Basel's claim that he owned the safe, the Government never disputed these facts.

Believing that appellants were relying on the "automatic standing" rule, which no longer has any vitality, the district court held, without a hearing and without ordering the production of the search warrant, that appellants lacked standing to contest the search. In its order denying appellants' motion to suppress, the court noted, inaccurately, that the search was limited to Mohammad's bedroom suite.

After trial, a jury found that all $40,955 constituted proceeds from marijuana sales, and the court entered a judgment and order of forfeiture on that amount.

## DISCUSSION

### (1)

### Motion to Suppress

#### A. *Basel and Fatima*

■ Because Basel and Fatima had a legitimate expectation of privacy in their home, we reverse the district court's order holding that they lacked standing to challenge the search warrant, and we remand to the district court so it may revisit that motion. Whether appellants had a legitimate expectation of privacy in the home

2. The search warrant was not part of the record below. However, on appeal, the parties submitted copies of the warrant, the supplemental affidavit, which was executed after

the warrant was issued, the inventory of the search and the sealing order.

3. Mohammad also filed a claim, which he later withdrew.

presents a mixed question of fact and law. *United States v. Singleton,* 987 F.2d 1444, 1447 (9th Cir.1993). "The district court's ultimate legal conclusion is reviewed de novo, and the findings of fact underlying that conclusion are reviewed for clear error." *Id.*

The question of who is entitled to contest a search is often framed as one of standing. However, since the Supreme Court's "long history of insistence that Fourth Amendment rights are personal in nature has already answered many ... traditional standing inquiries, ... definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Thus, the Fourth Amendment entitles only those who have a legitimate expectation of privacy in an area to challenge a search of it. *See, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Appellants have the burden of establishing their legitimate expectations of privacy. *United States v. Zermeno,* 66 F.3d 1058, 1061 (9th Cir.1995). The expectation must be an actual one and "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotation marks omitted) (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

The district court's denial of Basel and Fatima's standing appears to have been based on a misunderstanding of their claim. While the district court accurately pointed out that the "automatic standing" rule from *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), has long been overruled, it erroneously construed Basel and Fatima's claims of ownership and possession of the house as

arguments supporting their automatic standing to contest the search. On this mistaken assumption, the district court held that Basel and Fatima lacked standing because they did not "attempt to establish that they had a legitimate expectation of privacy in Mohammad's bedroom."

However, "attempt[ing] to establish ... a legitimate expectation of privacy" is precisely what Basel and Fatima were doing in claiming ownership of and residence in the house. Under the *Jones* rule, a criminal defendant charged with possession automatically had standing to contest the search which yielded the item he was accused of possessing. 362 U.S. at 264, 80 S.Ct. 725. The Supreme Court has since rejected the "automatic standing" rule in favor of a rule requiring defendants to show a legitimate expectation of privacy in the area searched. *United States v. Salvucci,* 448 U.S. 83, 92, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Thus, while ownership of the *good* seized does not automatically confer standing on a defendant, ownership and possession of as well as access to the *area* in which the good was found is certainly an important factor in determining whether a defendant has a legitimate expectation of privacy in it. *See Alderman v. United States,* 394 U.S. 165, 176–77, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *see also Kyllo v. United States,* 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Minnesota v. Carter,* 525 U.S. 83, 100, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (Kennedy, J., concurring); *United States v. Reed,* 572 F.2d 412, 422 (2d Cir.1978) (collecting Supreme Court cases affirming the special protection afforded one's privacy in his home). Appellants, therefore, justifiably pointed out that "'it is difficult to fathom how [the Government] can seriously argue the owners of the residence, who reside in the residence don't have standing.'" Accordingly, the district court erred in ruling

that Basel and Fatima lacked a legitimate expectation of privacy based on its construction of appellants' argument as one seeking automatic standing.

The Government contends that, regardless of Basel and Fatima's occupancy of the home, which it does not dispute, they did not have a privacy interest in Mohammad's bedroom. The Government seems to argue that, because Mohammad had possession of the bedroom, which had a separate entrance and out of which he conducted a business, it formed, in effect, a separate apartment in which Basel and Fatima retained no expectation of privacy.

First, the Fourth Amendment does not require Basel and Fatima to establish that they had an exclusive possessory interest, *see Bumper v. North Carolina*, 391 U.S. 543, 548 n. 11, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), or an exclusive right of access or exclusion, *see Minnesota v. Olson*, 495 U.S. 91, 99–100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), in the bedroom. *See also Commonwealth v. Strickland*, 457 Pa. 631, 326 A.2d 379, 383 (1974) (applying *Bumper* and holding that the defendant could challenge admission into evidence of a letter that was found in a room other than the one he slept in five nights a week). Basel and Fatima's uncontested declarations of ownership and occupancy established their expectations of privacy in the entire home, which included Mohammad's bedroom.

Furthermore, Mohammad's bedroom was not sufficiently separate to deprive Basel and Fatima of an expectation of privacy. Despite Mohammad's occupancy, his bedroom formed part of the home, an area in which Basel and Fatima had a legitimate privacy interest. Looking again to appellants' uncontested declarations, Mohammad, Basel and Fatima took no steps to separate Mohammad's bedroom from the rest of the house by, for instance, installing a lock on the door or having Mohammad pay rent. Indeed, Basel and Fatima claimed rights of access, possession and exclusion in the bedroom.

Likewise, Mohammad's commercial activity did not interrupt Basel and Fatima's expectation that they would be free from police intrusion into their home. *Compare Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (holding that the Fourth Amendment protects individuals from government intrusion into the office as well as the home), *with United States v. Ealy*, 363 F.3d 292, 295 n. 1 (4th Cir.2004) (holding that the defendant had no reasonable expectation of privacy in an adjacent, detached garage where his brother performed commercial auto work and which the police entered through an open service entrance sometimes used by the public). Regardless of Mohammad's marijuana dealing, his bedroom remained part of the home in which Basel and Fatima had an expectation of privacy.

## B. *Rawia*

■ Rawia did not share her parents' expectation of privacy in the home and, thus, is not entitled to challenge the legality of the search. In determining whether Rawia had a legitimate expectation of privacy in the home, we must look at the totality of circumstances. *See Rawlings*, 448 U.S. at 104, 100 S.Ct. 2556. Although Rawia had free access and a key to the house, she did not own the house and did not live there at the time of the search. She claimed that she stored items in Mohammad's safe, but we have never held that storage alone confers a Fourth Amendment interest in the area searched. *See, e.g., United States v. Davis*, 932 F.2d 752, 757 (9th Cir.1991) (holding that a party had a Fourth Amendment interest because he both stored items in a safe and paid part of the rent for the apartment in

which the safe was kept). Moreover, even if the jury believed she had a claim to any of the money, mere ownership of the item seized does not entitle its owner to challenge the search of the area in which it was found. *See Salvucci*, 448 U.S. at 92, 100 S.Ct. 2547. In light of the totality of circumstances, Rawia has not met her burden in establishing a legitimate expectation of privacy.

### (2)

### Other Issues

A. *Applicability of Crawford v. Washington*

■ The district court did not err in admitting statements Mohammad made to the police during and after the search of the house. According to appellants, the testimony was barred by the Confrontation Clause of the Sixth Amendment. In *Crawford v. Washington*, 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause prohibits the introduction of "testimonial" out-of-court statements[4] by witnesses whom the accused had no opportunity to confront. Although some constitutional protections apply to civil forfeiture proceedings, the Supreme Court long ago established in *United States v. Zucker*, 161 U.S. 475, 481, 16 S.Ct. 641, 40 L.Ed. 777 (1896), that the Confrontation Clause does not, and there has been no indication since *Crawford* that the Court will revisit its holding in *Zucker*.

B. *Spoliation*

■ The district court did not abuse its discretion by denying appellants' motion to dismiss. Appellants moved to dismiss on the basis of spoliation. Their argument was that the series years on the bills seized by the Narcotics Unit would have tended to show that they belonged to Basel, who claimed to have earned them long ago, and not Mohammad, who would have earned them more recently. According to appellants, the Government had deprived them of the ability to prove that the currency was old by depositing it in a bank, thereby despoiling evidence essential to their claims.

■ Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995)). However, sanctions may issue only when a party had some notice that the evidence was potentially relevant. *See Leon*, 464 F.3d at 959; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002); *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *See Kitsap Physicians*, 314 F.3d at 1001–02 (affirming the district court's finding of no spoliation when potentially relevant documents were destroyed in the defendants' normal course of business).

Appellants contend that they gave the Government notice of the relevance of the bills when Basel told the police at the time of the search that the bills belonged to him and that he had earned them long ago. This, however, was not adequate notice. It is unreasonable to expect that, from these statements, the police were meant to divine that evidence of the series years, which indicate a bill's age, should somehow be preserved. At no subsequent point un-

---

4. Testimonial statements include those made during police interrogations. *Crawford*, 541 U.S. at 52, 68, 124 S.Ct. 1354.

til the motion was filed in September 2006, nearly a year after the complaint and a year and a half after the search, was there a request for the preservation of the bills. Considering the currency's marginal relevance and appellants' inadequate notice, the district court did not err in denying appellants' motion to dismiss.

## CONCLUSION

The district court's order holding that appellants lacked standing to challenge the search warrant is reversed as to Basel and Fatima, affirmed as to Rawia, and remanded to the district court for further proceedings consistent with this opinion. The district court's rulings denying appellants' Fifth Amendment and spoliation claims are affirmed. Each party to bear its own costs.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.